UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JUOCHI IWEALA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 04-2067 (RWR) |
| | ) | |
| OPERATIONAL TECHNOLOGIES SERVICES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Juochi Iweala, a black female from Nigeria who was pregnant twice while employed by defendant Operational Technologies Services, Inc. ("OTS") brings this action under Title VII, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981, alleging that OTS discriminated against her because of her race, national origin, and pregnancies.  After the close of discovery, OTS moved for summary judgment.  Because Iweala failed to exhaust her administrative remedies under Title VII with respect to claims challenging discrete acts alleged to have occurred more than 300 days before she filed her administrative charge, summary judgment will be granted for the defendant with respect to such untimely claims.  Because Iweala may bring her claims regardless of her visa status during her employment with OTS and because Iweala has created genuine factual disputes with respect to her timely disparate treatment, retaliation, and hostile work

-2-

environment claims, the defendant's motion for summary judgment
will be denied in all other respects.

### BACKGROUND

Iweala, who worked for OTS as a Computer Systems
Analyst/Programmer from 2001 until she was terminated on March 5,
2003, brings her amended complaint under Title VII and § 1981,
alleging claims of disparate treatment, retaliation, and hostile
work environment.  She alleges that among other allegedly
discriminatory actions, her supervisors excluded her from
meetings, placed her on the bottom of every leader chart for
assignments, reprimanded her when other similarly-situated
individuals were treated more favorably, treated her rudely,
subjected her to profanity, removed her from service on OTS' help
desk, and ultimately terminated her because of her race, national
origin, and pregnancy status.  (Am Compl. ¶¶ 32-35; 38-51.)  In
addition, Iweala contends that she experienced retaliation after
she repeatedly complained to her direct supervisors and other OTS
management about her discriminatory treatment.  (Id. ¶¶ 62-64.)

OTS has moved for summary judgment contending that Iweala is
precluded from bringing her claims under Title VII and § 1981
because Iweala's immigration status made her ineligible for
employment while she was employed at OTS.  In the alternative,
OTS argues that to the extent Iweala's visa status does not
preclude her claims, Iweala has not raised a genuine dispute of

-3-

material fact and OTS is entitled to judgment as a matter of law with respect to all claims.

## DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute about a material fact is "genuine . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Facts in dispute are material if they are capable of affecting the outcome of the suit under governing law. Id. In considering a motion for summary judgment, a court must view all evidence and inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

I.   IWEALA'S VISA STATUS

OTS first argues that Iweala has no standing to bring her claims under Title VII or § 1981 because her visa status made her employment with OTS unlawful. (Def.'s Mem. in Support of its Mot. For Summ. J. ("Def.'s Mem.") at 8.) OTS relies on a line of cases from the Fourth Circuit: Egbuna v. Time-Life Libraries,

-4-

Inc., 153 F.3d 184 (4th Cir. 1998), cert. denied, 525 U.S. 1142 (1999), Chaudhry v. Mobile Oil Corp., 186 F.3d 502 (4th Cir. 1999), and Reyes-Gaona v. N.C. Growers Ass'n, 250 F.3d 861 (4th Cir. 2001).  In Egbuna, the Fourth Circuit held that a plaintiff is entitled to remedies under Title VII "only upon a successful showing that the applicant was qualified for employment."  153 F.3d at 187.  Egbuna explained that when a job "applicant is an alien, being 'qualified' for the position is not determined by the applicant's capacity to perform the job -- rather, it is determined by whether the applicant was an alien authorized for employment in the United States at the time in question."  Id. The Fourth Circuit reaffirmed its position the following year in Chauhdry, stating that a "foreign national is qualified for employment," and therefore entitled to Title VII protection, "if 'the applicant was an alien authorized for employment in the United States at the time in question.'"  186 F.3d at 504 (quoting Egbuna, 153 F.3d at 187).

In addition, OTS also argues that Iweala's claims should be barred under the reasoning of the Supreme Court's decision in Hoffman Plastic Compounds, Inc. v. NLRB, 535 U.S. 137 (2002).  In Hoffman, an employer challenged the NLRB's decision to award backpay to undocumented foreign nationals under the National Labor Relations Act.  Hoffman held that the Immigration Reform and Control Act ("IRCA") of 1986 precluded the NLRB from awarding

backpay to undocumented foreign nationals because awarding backpay to them "would unduly trench upon explicit statutory prohibitions critical to federal immigration policy . . . [and] encourage the successful evasion of apprehension by immigration authorities, condone prior violations of the immigration laws, and encourage future violations."  535 U.S. at 151.  Nonetheless, in rejecting the backpay award, the Court noted that their decision did "not mean that the employer [got] off scot-free" because the Board had "already imposed other significant sanctions."  Id. at 152.

     In contrast to the Fourth Circuit's rule, in Rivera v. NIBCO, Inc., 364 F.3d 1057 (11th Cir. 2004), the Eleventh Circuit concluded that the protections of Title VII do apply to undocumented foreign nationals.  In Rivera, the plaintiffs, employees of defendant NIBCO, Inc., alleged claims of employment discrimination based on national origin under Title VII.  Id. at 1061.  NIBCO filed an interlocutory appeal challenging a protective order barring it "from using the discovery process to inquire into the plaintiffs' immigration status and eligibility for employment."  Id.  Although NIBCO conceded that Title VII applies to undocumented foreign nationals, the Eleventh Circuit, in recognizing NIBCO's concession, explained that NIBCO's concession was "consistent with what [they had] long assumed to be the law of [that] circuit."  364 F.3d at 1064 n.4 (citing EEOC

-6-

v. Hacienda Hotel, 881 F.2d 1054, 1517 n.10 (9th Cir. 1989)).

The Eleventh Circuit also questioned whether Hoffman's limitation

on backpay under the NLRA should be extended to bar backpay

awards under Title VII, noting the differences between scope of

private actions and remedies available under each statute.  See

id. at 1066-70.  Ultimately, it determined that it "need not

decide the Hoffman question" at that time because the question of

whether undocumented foreign nationals are entitled to backpay

"'goes to the issue of damages, not liability.'"  Id. at 1069

(quoting Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir. 1997)).

Moreover, in Agri Processor Co., Inc. v. NLRB, 514 F.3d 1

(D.C. Cir. 2008), the D.C. Circuit considered whether after IRCA

and Hoffman, undocumented workers are employees covered under the

NLRA's definition of employee.  The court of appeals found that

"nothing in IRCA's text alter[ed] the NLRA's [expansive]

definition of 'employee,'"[1] which had been previously interpreted

---

[1]Under the NLRA,
[t]he term "employee" shall include any employee, and
shall not be limited to the employees of a particular
employer, unless th[e] subchapter explicitly states
otherwise, and shall include any individual whose work
has ceased as a consequence of, or in connection with,
any current labor dispute or because of any unfair
labor practice, and who has not obtained any other
regular and substantially equivalent employment, but
shall not include any individual employed as an
agricultural laborer, or in the domestic service of any
family or person at his home, or any individual
employed by his parent or spouse, or any individual
having the status of an independent contractor, or any
individual employed as a supervisor, or any individual

to include undocumented workers.  Agri Processor Co., 514 F.3d at

4.  Thus, applying the rule that "'where two statutes are capable

of co-existence, it is the duty of the courts, absent a clearly

expressed congressional intention to the contrary, to regard each

as effective[,]'" the court of appeals found that undocumented

foreign workers were covered under the NLRA's definition of

employee.  Id. at 4-5 (quoting Ruckelshaus v. Monsanto, 467 U.S.

986, 1018 (1984)) (internal quotation marks omitted).  The court

expressly rejected the argument that the Supreme Court's decision

in Hoffman excluded undocumented foreign workers from protection

under the NLRA, noting that the Supreme Court's decision in

Hoffman "addressed only what remedies the NLRB may grant

undocumented aliens when employers violate their rights under the

NLRA," and the Court "explicitly declined to revisit [its

previous] holding that undocumented aliens are employees under

the NLRA."  Id. at 7.

Like the NLRA's definition of employee, Title VII's

definition of employee broadly states that "[t]he term 'employee'

means an individual employed by an employer," except for a few

narrow exceptions not applicable in this case.  42 U.S.C.

§ 2000e(f).  Thus, Title VII, by its sweeping language, would

employed by an employer subject to the Railway Labor
Act, as amended from time to time, or by any other
person who is not an employer as herein defined.
29 U.S.C. § 152(3).

seem to encompass all employees regardless of immigration and visa status.  Similarly, § 1981 affords "all persons within the jurisdiction of the United States" the right "to make and enforce contracts."  42 U.S.C. § 1981.  OTS identifies no congressional action clearly intending to limit the scope of these broad statutes to exclude foreign nationals without proper work authorizations.  Following the reasoning of Agri Processor, because neither Title VII nor IRCA clearly expresses Congress's intent to exclude foreign nationals without proper work visas from Title VII's coverage, Iweala's visa status and eligibility for employment with OTS should not preclude her from protection under Title VII, although her visa status and eligibility for employment may limit her remedies.  It is enough at this stage to conclude that Iweala's claims may proceed regardless of whether her visa status made her employment with OTS unlawful, and it is unnecessary to sort out what remedies may or may not be available to her before any liability has been conclusively determined.

## II.  EXHAUSTION

OTS argues that it is entitled to judgment on all of Iweala's claims arising from adverse actions occurring more than 300 days before Iweala filed her charge with the EEOC.  In her opposition to OTS' motion, Iweala does not respond to this argument.  "'It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing

only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.'"  Peter B. v. CIA, Civil Action No. 06-1652 (RWR), 2009 WL 1529211, at *5 (D.D.C. June 1, 2009) (quoting Hopkins v. Women's Div., Gen. Bd. of Global Ministries, 238 F. Supp. 2d 174, 178 (D.D.C. 2002)).  Thus, Iweala has conceded that any Title VII claims arising from adverse actions occurring more than 300 days before April 21, 2003 -- the date she filed her administrative charge -- are barred and summary judgment will be granted for OTS with respect to any Title VII claim based upon an adverse action that occurred more than 300 days before Iweala filed her EEOC complaint.

III. DISPARATE TREATMENT

Claims of disparate treatment under Title VII are analyzed under the familiar burden-shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  The same framework applies to § 1981 claims.  See Carney v. Am. Univ., 151 F.3d 1090, 1092-93 (D.C. Cir. 1998) (explaining that "[i]n order to evaluate claims under 42 U.S.C. § 1981, . . . courts use the three-step McDonnell Douglas framework for establishing racial discrimination under Title VII"); Prince v. Rice, 453 F. Supp. 2d 14, 21 (D.D.C. 2006).  At the summary judgment stage, a plaintiff carries the initial burden to establish a prima facie case of discrimination.  McDonnell Douglas, 411 U.S. at 802.  To

-10-

establish a <u>prima facie</u> discrimination case, the plaintiff must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." <u>Vickers v. Powell</u>, 493 F.3d 186, 194 (D.C. Cir. 2007) (internal quotations and citations omitted).  Establishing a <u>prima facie</u> case "in effect creates a presumption that the employer unlawfully discriminated against the employee." <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254 (1981).  If the plaintiff meets the burden of establishing a <u>prima facie</u> case, the burden shifts from the plaintiff-employee to the defendant-employer, who must then rebut the presumption of discrimination by producing admissible evidence showing a legitimate, nondiscriminatory reason for the adverse action taken against the employee. <u>Burdine</u>, 450 U.S. at 255-56; <u>McDonnell Douglas</u>, 411 U.S. at 802. Once the employer carries his burden, the presumption raised by the <u>prima facie</u> case vanishes and the employee then bears the burden of proving discrimination by showing that the defendant's nondiscriminatory reason was pretextual and "that the employer intentionally discriminated against the employee on the basis of race, color, religion, sex, or national origin[.]" <u>See</u> <u>Brady v. Office of the Sergeant at Arms</u>, 520 F.3d 490, 494 (D.C. Cir. 2008).

-11-

The court of appeals has explained that "'the prima facie case is a largely unnecessary sideshow'" once an employer asserts a legitimate, nondiscriminatory reason for an adverse employment action.  Adeyemi v. District of Columbia, 525 F.3d 1222, 1226 (D.C. Cir. 2008) (quoting Brady, 520 F.3d at 494).  If an employer has offered a legitimate, nondiscriminatory reason for the alleged adverse action taken, "the district court must conduct one central inquiry in considering an employer's motion for summary judgment . . . : whether the plaintiff produced sufficient evidence for a reasonable jury to find that the employer's asserted non-discriminatory reason [for an adverse action] was not the actual reason and that the employer intentionally discriminated against the plaintiff on a prohibited basis."  Id. at 1226.  In determining whether a plaintiff has provided sufficient evidence of discrimination, a court may consider "'(1) the plaintiff's prima facie case; (2) any evidence the plaintiff presents to attack the employer's proffered explanations for its actions; and (3) any further evidence of discrimination that may be available to the plaintiff (such as independent evidence of discriminatory statements or attitudes on the part of the employer).'"  Dunaway v. Int'l Bhd. of Teamsters, 310 F.3d 758, 763 (D.C. Cir. 2002) (quoting Waterhouse v. District of Columbia, 298 F.3d 989, 993 (D.C. Cir. 2002)).  One way a plaintiff may show an "employer's stated reason for [an]

-12-

employment action was not the actual reason" is by "produc[ing] evidence suggesting that the employer treated other employees of a different race, color, religion, sex, or national origin more favorably in the same factual circumstances." Brady, 520 F.3d at 495. In addition, inconsistent justifications for terminating an employee can raise a genuine issue of material fact that precludes summary judgment. See EEOC v. D.C. Pub. Schools, 277 F. Supp. 2d 44, 51 (D.D.C. 2003).

In this case, there is no question that Iweala's status as a black Nigerian female who was pregnant at the time she was terminated places her in protected groups, nor is there any dispute that her termination is an actionable adverse employment action. It is unclear from Iweala's filings which alleged actions by OTS beyond her termination she asserts as discriminatory adverse actions that are individually actionable as significant changes in her employment status; which ones she concedes, if any, are not individually actionable discrete acts, but cumulatively support a hostile work environment claim; or whether she is attempting to preserve her arguments in the alternative. For Iweala's claims of disparate treatment on the basis of race, national origin, and pregnancy, the defendant's motion focuses primarily on whether she has stated a claim with respect to her termination, with little discussion of what other alleged actions may or may not have been sufficiently substantial

-13-

changes in the terms and conditions of Iweala's employment to be actionable as discrete acts. Because OTS's motion does not clearly put Iweala or the court on notice that it seeks a ruling on whether Iweala has provided sufficient evidence demonstrating that any other alleged action taken against her besides her termination was a discrete act individually supporting a claim on its own, OTS' motion will be construed as challenging whether Iweala has provided sufficient evidence upon which a reasonable jury could conclude that her termination was the result of race, national origin, or pregnancy discrimination.

OTS has offered legitimate, nondiscriminatory reasons why it terminated Iweala's employment. It alleges that Iweala was terminated for poor work performance, including her missing deadlines and turning in assignments with errors, and her "inability to behave in a professional manner and accept constructive criticism regarding her work." (Def.'s Mot. for Summ. J. at 21; Pl.'s Opp'n, Ex. 2, Lobb Dep. Tr. 138:12-18.) Thus, the critical question is whether Iweala has put forth sufficient evidence for a reasonable jury to find that OTS' asserted reason for her termination was pretextual and the actual reason was her race, national origin, or pregnancy status.

Iweala has identified several pieces of evidence to show that OTS' alleged reasons for terminating her were pretextual. First, she submits her 2002 annual performance appraisal

-14-

reflecting performance ratings of "very good" in most areas.
(Pl.'s Opp'n, Ex. 9, Performance Appraisal.)  Iweala also
provides evidence that there were two other employees who caused
a disruption in the workplace who were not terminated.  (See
Pl.'s Opp'n, Ex. 10, Brown Dep. Tr. 135:6-10.)  Finally, Iweala
also submits her own testimony stating that she did not cause a
disturbance in the office on the day she was terminated.  (See
Pl.'s Opp'n, Ex. 1 ("Iweala Dep. Tr.") 447:1-449:15.)

In addition, Iweala provides other circumstantial evidence
in support of her disparate treatment claims.  She claims that
she was excluded from meetings to which other similarly-situated
employees were invited, and that she was disciplined for missing
a day of work when other similarly-situated individuals were not
disciplined.  Iweala also alleges that her supervisor, Joe
Castle, removed her from help desk service because she had an
accent.  (Iweala Dep. Tr. 281:7-20.)  Finally, Iweala alleges
that she notified her supervisors about her pregnancy in October
of 2002 and that she complained about her pregnancy on or around
March 3, 2003, just before she was terminated.  (See Iweala Dep.
Tr. 439:1-16; 442:10-443:19.)

Viewing all of this evidence in the light most favorable to
her, Iweala has carried her burden of identifying evidence upon
which a reasonable jury could conclude that OTS' stated reasons
for her termination were pretextual and that the actual reason

-15-

for her termination was unlawful discrimination.  Thus, OTS'
motion for summary judgment will be denied with respect to
Iweala's claims of disparate treatment.

IV.  RETALIATION

Beyond her disparate treatment claims, Iweala also alleges a
hostile work environment claim and a retaliation claim.  First,
she alleges that her termination was unlawful retaliation against
her because she complained about discrimination to a variety of
supervisors at OTS.  (Pl.'s Opp'n at 5-6.)  For her retaliation
claim, Iweala "must show 1) that she engaged in a statutorily
protected activity; 2) that the employer took an adverse
personnel action; and 3) that a casual connection existed between
the two."  Brown v. Brody, 199 F.3d 446, 452 (D.C. Cir. 1999)
(internal quotation marks omitted).  "Temporal proximity" between
a complaint of discrimination and an adverse action, such as
termination, can "support a jury's finding of a causal link."
Patterson v. Johnson, 505 F.3d 1296, 1299 (D.C. Cir. 2007).  In
support of her retaliation claim, Iweala provides her answer to
OTS' interrogatory and her deposition testimony stating that she
complained to a variety of individuals about alleged
discriminatory conduct toward her, including Diane Brown, Joseph
Castle, and Gerald Lobb -- all of whom Iweala alleges were
involved in the decision to terminate her -- and to OTS's Vice
President of Operations, Pearlis Johnson.  (Pl.'s Opp'n, Ex. 5,

Interrog. 2; see Iweala Dep. Tr. 442:19-22, 449:11-450:11; Pl.'s
Opp'n, Ex. 3, Johnson Dep. Tr. 22:18-25:21.)  Notably, in her
answers to OTS's interrogatories, Iweala contends that she
complained repeatedly to Lobb in February, shortly before her
termination.  (See Pl.'s Opp'n, Ex. 5, Interrog. 2.)  In
addition, as is discussed above, Iweala has provided evidence
tending to show that OTS' proffered reasons for her termination
was pretextual.  In light of the temporal proximity between
Iweala's complaints of discrimination and her termination, Iweala
has identified sufficient evidence in support of her retaliation
claim to withstand OTS' motion for summary judgment.

V.   HOSTILE WORK ENVIRONMENT

     Iweala also alleges a hostile work environment claim.  OTS
contends that Iweala failed to properly exhaust her
administrative remedies with respect to any hostile work
environment claim by not alleging it in the charge of
discrimination she filed with the D.C. Office of Human Rights and
the EEOC.  "[A] Title VII lawsuit following the EEOC charge is
limited in scope to claims that are like or reasonably related to
the allegations of the charge and growing out of such
allegations."  Park v. Howard Univ., 71 F.3d 904, 907 (D.C. Cir.
1995) (internal quotation marks omitted).  However, the court of
appeals has cautioned that "the administrative charge requirement
should not be construed to place a heavy technical burden on

'individuals untrained in negotiating procedural labyrinths[.]'"
Id. (quoting Loe v. Heckler, 768 F.2d 409, 417 (D.C. Cir. 1985)).
Nonetheless, "the requirement of some specificity in a charge is
not a mere technicality." Id. (internal quotation marks
omitted).

When Iweala first filed her charge of discrimination on
April 21, 2003, she checked the boxes for discrimination on the
basis of sex, race and national origin, and retaliation.  She
then filed an amended charge on May 8, 2003, where she checked
the boxes for discrimination on the basis of sex and race,
retaliation, and other, although she did not clearly specify what
claim she alleged as falling within the "other" category.  She
also checked the box for a continuing action each time.  In her
first charge, she states that "she was intentionally isolated
from attending most of the analyst/programmers meetings several
times" between December 2001 and May 2002.  (Def.'s Mot., Ex. H,
Apr. 21, 2003 Charge.)  She also states that she was "subjected
to different terms and conditions of employment regarding
discipline, tardiness, and workload." (Id.)  In her second
charge, she states that she was harassed and discriminated
against because of her first pregnancy, and that when she was
visibly pregnant with her second child, her supervisors increased
her workload and shortened her deadlines.  (Def.'s Mot., Ex. H,
May 8, 2003 Charge.)  Although Iweala did not expressly state she

was alleging a hostile work environment claim, her administrative charges identify the facts underlying her claim, including her exclusion from meetings and increased workload.  Thus, her hostile work environment claim is at least reasonably related to the allegations in her administrative charge, and she has properly exhausted her administrative remedies with respect to her hostile work environment claim.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive enough to alter the conditions of the victim's employment and create an abusive working environment, . . . Title VII is violated."  Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal citation and quotation marks omitted).  In Faragher v. City of Boca Raton, 524 U.S. 775 (1998), the Supreme Court made clear, however, that for a successful hostile work environment claim, "conduct must be extreme to amount to a change in the terms and conditions of employment."  Id. at 788.  Thus, "offhand comments and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'"  Id.; see Holbrook v. Reno, 196 F.3d 255, 262-63 (D.C. Cir. 1999) (concluding that no reasonable jury could have found that an allegedly "abusive" four-hour interview alone altered the conditions of the plaintiff's employment where the

plaintiff failed to show any post-interview changes to her work environment).  In addition, "in order to be actionable under the statute, a [hostile work] environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so."  Faragher, 524 U.S. at 787.  Determining whether an employee's work environment is hostile requires examining "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether [such conduct] is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with the employee's work performance."  Vickers, 493 F.3d at 197 (internal quotation marks omitted).

Here, Iweala alleges that she experienced a hostile work environment when her supervisors increased her workload and shortened her deadlines so that she could not complete her assignments, "ostracized" her and treated her "in a rude manner," repeatedly excluded her from meetings to which she should have been invited, removed her from serving on OTS' help desk, reprimanded her on one occasion for failing to show up for work because of snow when others were not reprimanded, and subjected her to profanity.  (Pl.'s Opp'n at 14.)  Iweala's main evidence in support of her allegations is her own deposition testimony attesting to her treatment and stating that she perceived the

alleged actions taken against her as the result of her race,
national origin, and pregnancy status, and that these actions
interfered with the conditions of her employment.  (<u>See</u> Iweala
Dep. Tr. 197:1-198:15, 277:10-281:20, 286:12-288:12, 434:4-12.)
Iweala also provides the deposition testimony of her former
supervisor Lionel Mew conceding that profanity was sometimes used
in the workplace.  (Pl.'s Opp'n, Ex. 12, Mew Dep. Tr. 65:1-19.)
Although, as OTS points out, absent from Iweala's allegations is
any evidence of overt comments about her race, national origin,
or pregnancy status made directly to her, Iweala has provided
other circumstantial evidence, described above, supporting her
allegations that OTS' actions were motivated by unlawful
discrimination.  Thus, Iweala has sufficiently raised a disputed
factual question as to whether an objectively reasonable person
would find Iweala's workplace to be "permeated with
discriminatory intimidation, ridicule, and insult that [was]
sufficiently severe" to alter the conditions of her employment.
<u>Harris</u>, 510 U.S. at 370 (internal quotation marks omitted).
Accordingly, OTS' motion for summary judgment on Iweala's hostile
work environment claim will be denied.

<u>CONCLUSION AND ORDER</u>

Because Iweala has conceded that any claim arising from a
discrete act of discrimination more than 300 days before the
filing of her administrative charge is time-barred, OTS' motion

-21-

for summary judgment will be granted and judgment will be entered in favor of the defendant with respect to any claim challenging a discrete act of discrimination that occurred more than 300 days before Iweala filed her administrative charge with the EEOC.  On the other hand, because Iweala's claims are not barred by her visa status at the time of her employment with OTS, and because she has provided sufficient evidence to raise genuine disputes of material fact with regard to her disparate treatment, retaliation, and hostile work environment claims, OTS' motion for summary judgment will be denied in all other respects. Accordingly, it is hereby

ORDERED that the defendant's motion [31] for summary judgment be, and hereby is, GRANTED IN PART and DENIED IN PART. Judgment is ENTERED in favor of the defendant with respect to any claim challenging a discrete act of discrimination that occurred more than 300 days before Iweala filed her administrative charge with the EEOC.  The motion is denied in all other respects.

SIGNED this 14th day of July, 2009.


_____/s/_____
RICHARD W. ROBERTS
United States District Judge